**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**No. 0:23-mc-62400-JIC**

**WILLIAM ROSE, an individual,**

**Plaintiff,**

**v.**

**CELLULAR TOUCH WIRELESS, INC.,**
**a Florida corporation,**

**Defendant.**

_____

**NONPARTY T-MOBILE USA, INC.'S MOTION TO INTERVENE
TO TRANSFER MOTION TO COMPEL, QUASH SUBPOENA,
OR FOR PROTECTIVE ORDER**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ............................................................................................... 1

II.     FACTUAL BACKGROUND ............................................................................ 3

      A.      Mr. Rose Files the Cellular Touch Lawsuit. ............................................ 3

      B.      Mr. Rose Previously Arbitrated Against T-Mobile. ................................. 4

      C.      Mr. Rose Issues Subpoenas Regarding KPMG's Work. .......................... 4

      D.      The Parties Meet and Confer. ................................................................... 5

      E.      Mr. Rose Moves to Compel Compliance in Three Jurisdictions. ............ 6

III.    ARGUMENT ..................................................................................................... 6

      A.      T-Mobile Has Standing to Intervene. ....................................................... 6

      B.      The Court Should Transfer Mr. Rose's Motion to Compel
            Compliance. ............................................................................................... 8

      C.      In the Alternative, the KPMG Subpoena Should Be Quashed. ........... 10

            1.      The Information Mr. Rose Seeks Is Neither Relevant Nor
                 Proportional to the Needs of His Case. ...................................... 11

            2.      The Subpoena Seeks Highly Confidential Information for
                 which Mr. Rose Does Not Have a Substantial Need. ................. 12

      D.      In the Alternative, Conditions on Review Should be Imposed. ............. 16

IV.     CONCLUSION ............................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*,
  2014 WL 1660386 (S.D. W.Va. Apr. 22, 2014) ..................................................... 13

*Costa v. Metro. Life Ins. Co.*,
  2018 WL 1635642 (M.D. Fla. Apr. 5, 2018) ........................................................... 7

*Culinary Foods, Inc. v. Raychem Corp.*,
  151 F.R.D. 297, *ord. clarified by* 153 F.R.D. 614 (N.D. Ill. 1993) .................. 13, 15

*Dogra v. Hardin*,
  2022 U.S. Dist. LEXIS 210908 (C.D. Cal. Nov. 18, 2022) .................................... 10

*Drummond Co. v. Collingsworth*,
  2014 WL 12862208 (S.D. Fla. July 11, 2014) ......................................................... 9

*Ephraim v. Abbott Lab'ys*,
  601 F. Supp. 3d 1274 (S.D. Fla. 2022) ................................................................. 10

*Fadalla v. Life Auto. Prods., Inc.*,
  258 F.R.D. 501 (M.D. Fla. 2007), *recons. in part on other grounds*,
  2008 WL 68594 (M.D. Fla. Jan. 4, 2008) ......................................................... 11, 13

*Garcia v. L'Olivo S. Ave., LLC*,
  2023 WL 5042736 (M.D. Fla. Aug. 8, 2023) .......................................................... 11

*Health & Sun Rsch., Inc. v. Designer Skin, LLC*,
  2013 WL 12155011 (M.D. Fla. Mar. 27, 2013) ..................................................... 16

*Jabil, Inc. v. Essentium, Inc.*,
  2021 WL 1814158 (M.D. Fla. May 6, 2021) ........................................................... 7

*Jordan v. Comm'r, Miss. Dep't of Corr.*,
  947 F.3d 1322 (11th Cir. 2020) ....................................................................... 11, 13

*Medi-Weightloss Franchising USA, LLC v. Medi-Weightloss Clinic of
  Boca Raton, LLC*,
  2012 WL 12904394 (M.D. Fla. May 10, 2012) ........................................................ 7

*Moore v. Lender Processing Servs., Inc.*,
  2012 WL 4953127 (M.D. Fla. Oct. 17, 2012) ........................................................ 15

ii

*Pro Video Instruments, LLC v. Thor Fiber, Inc.*,
    2019 WL 5296817 (M.D. Fla. Sept. 9, 2019)........................................................ 13

*In re Sec'y, Fla. Dep't of Corr.*,
    2020 WL 1933170 (11th Cir. Mar. 30, 2020) ...................................................... 13

*Smart Commc'ns Holding, Inc. v. Correct Sols., LLC*,
    2020 WL 10498681 (M.D. Fla. Dec. 2, 2020) .................................................... 16

*Suffolk Cnty. Water Auth. v. Dow Chem. Co.*,
    2022 WL 1025932 (E.D.N.Y. Apr. 6, 2022)........................................................ 13

*Swissdigital USA Co., Ltd. v. Wenger, S.A.*,
    2022 WL 17904108 (S.D. Fla. Dec. 23, 2022) ...................................................... 9

*Terpin v. AT&T Mobility, LLC*,
    2023 WL 2839068 (C.D. Cal. Mar. 28, 2023), *appeal filed* No. 23-55375
    (9th Cir. Apr. 24, 2023) .................................................................................... 3

*Wultz v. Bank of China, Ltd.*,
    304 F.R.D. 38 (D.D.C. 2014).............................................................................. 10

**State Cases**

*Cornelius v. Markle Investigations, Inc.*,
    220 Conn. App. 135 (2023) ................................................................................ 14

**Rules**

Fed. R. Civ. P.
    24.......................................................................................................................... 7
    24(a)(2) ................................................................................................................ 7
    26........................................................................................................................ 13
    26(c)(1)(G) ......................................................................................................... 13
    45.................................................................................................................... 8, 13
    45(d)(2)(B)(i).................................................................................................... 8
    45(d)(3)(A)-(B) ................................................................................................... 8
    45(d)(3)(B)(i)............................................................................................ 12, 15
    45(d)(3)(C) ....................................................................................................... 16
    45(f) ............................................................................................................ 8, 10

**Other Authorities**

National Counterintelligence and Security Center, *Insider Threat
    Mitigation for U.S. Critical Infrastructure Entities* (2021), available at
    https://www.dni.gov/files/NCSC/documents/news/20210319-Insider-
    Threat-Mitigation-for-US-Critical-Infrastru-March-2021.pdf ............................ 14

In this miscellaneous action, William Rose seeks to compel KPMG, LLP ("KPMG") to comply with a subpoena for documents related to nonparty T-Mobile USA, Inc. ("T-Mobile").  T-Mobile moves to intervene to ask the Court to transfer Mr. Rose's motion to compel (ECF No. 1) to the Middle District of Florida, which is best positioned to decide issues related to the KPMG subpoena and other subpoenas issued by Mr. Rose.  If the Court declines to transfer, it should quash the KPMG subpoena or enter a protective order.

## I.      INTRODUCTION

The dispute underlying Mr. Rose's subpoenas traces back to 2021, when attackers stole cryptocurrency that he held in an online account.  Mr. Rose, who at the time had wireless service through T-Mobile's "Metro by T-Mobile" brand, first asserted that T-Mobile was liable because he used his Metro phone line to access his cryptocurrency account.  He arbitrated his claims against T-Mobile, where he had opportunity to obtain evidence from T-Mobile and third parties, including KPMG, a consultancy firm that works in cybersecurity.  That arbitration was closed after a multi-day hearing.

Mr. Rose then pivoted to a lawsuit against a Metro retailer—Cellular Touch Wireless, Inc.—in the Middle District of Florida (the "Cellular Touch lawsuit").  He issued third-party subpoenas to T-Mobile, KPMG, and others.  Relevant here, Mr. Rose's sweeping KPMG subpoena demands information KPMG compiled after T-Mobile retained it in response to a 2021 cyberattack, *which did not expose Mr.*

1

*Rose's data and which does not form the basis for any of Mr. Rose's claims in the*
*Cellular Touch lawsuit.*

The information requested from KPMG relates to T-Mobile's network infrastructure and security. Not only is that information irrelevant to Mr. Rose's claims, it is highly sensitive. Its disclosure could undermine the effectiveness of the security measures that T-Mobile put in place to prevent another large-scale criminal attack on its critical infrastructure, which is relied upon to provide vital services for millions of customers.

But the Court need not consider the merits of the pending subpoena. The Court should grant T-Mobile's motion to transfer Mr. Rose's motion to compel compliance to the Middle District of Florida, where the Cellular Touch lawsuit has been pending since January 2023. KPMG consents to the transfer to the Middle District. And that court is best situated to consistently and efficiently address disputes regarding Mr. Rose's subpoenas. In addition to the motion he filed in this Court, Mr. Rose filed a motion to compel compliance with subpoenas served on T-Mobile for, among other things, overlapping documents relating to the work of KPMG in the District of New Jersey. Mr. Rose also filed a motion to compel compliance with a subpoena served on another T-Mobile cybersecurity vendor called Mandiant, Inc. ("Mandiant") in the Eastern District of California. Keeping these motions in separate district courts wastes judicial resources and creates the risk of inconsistent orders as to the same documents.

If the Court denies T-Mobile's motion to transfer, it should grant this motion to quash because the KPMG subpoena seeks irrelevant and confidential information.  At minimum, the Court should enter a protective order limiting the scope of the information produced and the manner of its production to minimize the potential harm.

## II.    FACTUAL BACKGROUND

### A.    Mr. Rose Files the Cellular Touch Lawsuit.

Mr. Rose initiated the underlying litigation in the Middle District of Florida in January 2023.  The sole defendant in Mr. Rose's underlying action is Cellular Touch, "an [a]uthorized dealer who operates retail store locations . . . under the brand of cellular telecommunications provider Metro by T-Mobile."  ECF No. 1 at Ex. D (Compl. filed in *Rose v. Cellular Touch Wireless, Inc.* (M.D. Fla.), Case No. 2:23-cv-22-JLB-KCD ("Compl.")) ¶ 4.  Metro by T-Mobile ("Metro") is a pre-paid wireless service offered by T-Mobile.

Mr. Rose alleges that his Metro wireless account was "SIM swapped"[1] by Cellular Touch "insiders."  Compl. ¶¶ 4, 39.  This was, according to Mr. Rose, an

---

[1]  "Cellular phones, tablets, and other mobile devices utilize an integrated microchip called a subscriber identity module ('SIM'); this SIM enables the device to authenticate to its wireless network.  The wireless network uses SIM identification information to associate the specific device with a phone number, in order to route communications and associate wireless services with a specific customer account.  A 'SIM swap' occurs when a phone number associated with one SIM becomes associated with a different SIM; no information contained on the previous SIM is transferred to the new SIM, other than the phone number."  *Terpin v. AT&T Mobility, LLC*, 2023 WL 2839068, at *1 (C.D. Cal. Mar. 28, 2023) (internal record citations removed), *appeal filed* No. 23-55375 (9th Cir. Apr. 24, 2023); *see also* Compl. ¶ 27.

isolated incident where "a representative[] of" Cellular Touch targeted Mr. Rose and "bypassed Metro by T-Mobile's security protocols and transferred to an unauthorized person Plaintiff's wireless telephone number." *Id.* ¶ 40. As alleged, attackers used control over Mr. Rose's phone number, along with information about him they obtained from other sources, to access his online accounts. *Id.* ¶ 47.

## B.   Mr. Rose Previously Arbitrated Against T-Mobile.

The underlying lawsuit against Cellular Touch is Mr. Rose's second legal action based on the SIM swap incident. In February 2022, Mr. Rose initiated an arbitration proceeding against T-Mobile before the American Arbitration Association. Compl. ¶ 10. Mr. Rose obtained discovery directly from T-Mobile in that proceeding and had the opportunity to seek evidence from third parties, including KPMG. Declaration of James Moon ("Moon Decl.") ¶ 7. The arbitration was closed after a full merits hearing on July 20, 2023. *Id.* Mr. Rose is now pursuing recovery against Cellular Touch based on the same incident.

## C.   Mr. Rose Issues Subpoenas Regarding KPMG's Work.

In connection with his lawsuit against Cellular Touch, Mr. Rose subpoenaed KPMG (and T-Mobile and Mandiant). *See, e.g.*, Moon Decl., Exs. A-B. Through his overlapping subpoenas to KPMG and T-Mobile, Mr. Rose seeks documents and communications relating to work KPMG did for T-Mobile following a cyberattack on T-Mobile's systems, which was announced on August 16, 2021. *See id.*

The cyberattack was perpetrated by a cybercriminal who, after months of unsuccessful attempts, hacked a T-Mobile laboratory environment by compromising a specialized piece of telecommunications equipment. Declaration of Chris Wallace

("Wallace Decl.") ¶ 3.  The equipment at issue in that incident is unrelated to unauthorized SIM swaps like the one that Mr. Rose alleges occurred here.  *Id.*  To be clear: *Mr. Rose's data was not exposed in the August 2021 cyberattack.  Id.*

Though prompted by the cyberattack, KPMG's engagement did not focus on it.  T-Mobile did not ask KPMG to analyze how the attack occurred or any backward-looking analysis of T-Mobile's systems.  Wallace Decl. ¶ 4.  KPMG was also not tasked to analyze unauthorized SIM swaps or Mr. Rose's incident.  *Id.*  And KPMG provided T-Mobile with no guidance on or recommendations about unauthorized SIM swapping, which is not surprising since the August 2021 incident did not involve a SIM swap.  *Id.*

Instead, KPMG performed forward-looking analyses to help T-Mobile prevent future incidents like the August 2021 cyberattack.  Wallace Decl. ¶ 4.  Thus, KPMG's work product contains highly sensitive information about T-Mobile's network infrastructure and newly adopted information security practices.  *Id.* ¶ 5.  If revealed, the content of KPMG's work could give those seeking to harm T-Mobile or its customers a roadmap to infiltrate its systems and elude the latest security controls.  *Id.* ¶ 6.

## D.     The Parties Meet and Confer.

T-Mobile has repeatedly stated its position that Mr. Rose is seeking irrelevant and highly confidential information.  *See* Moon Decl., Ex. C at p. 1.  Even so, T-Mobile has attempted to work with Mr. Rose to reach a reasonable resolution short of motion practice in connection with his subpoenas.  Moon Decl. ¶ 6.  The subpoena to KPMG was dated May 23, 2023, and the subpoena to T-Mobile was

dated September 18, 2023.  *Id.*, Exs. A-B.  Both parties served objections.  *Id.* ¶¶ 4-5, Exs. C-D.  Then, counsel for T-Mobile met and conferred with counsel for Mr. Rose numerous times in an attempt to resolve their issues short of motion practice, including on November 6, 2023, November 16, 2023, November 20, 2023, November 28, 2023, December 11, 2023, and December 12, 2023.  *Id.* ¶ 6.  T-Mobile asked Mr. Rose to narrow his subpoenas.  *Id.*  T-Mobile also proposed allowing Mr. Rose to review certain documents relating to KPMG's work in a secure location, given the sensitivity of the information they contain.  *Id.*  The parties could not reach agreement.  *Id.*

Given Mr. Rose's continuing requests for broad categories of irrelevant discovery without adequate security protections, the parties have reached an impasse.

**E.      Mr. Rose Moves to Compel Compliance in Three Jurisdictions.**

Mr. Rose ultimately filed three separate motions to compel compliance with his three subpoenas.  He filed the motion to compel against KPMG in this Court on December 26, 2023.  ECF No. 1.  He filed the motion against T-Mobile in the District of New Jersey on December 22, 2023.  *See* D.N.J. Case No. 2:23-cv-23321. And he filed the Mandiant motion in the Eastern District of California on December 28, 2023.  *See* E.D. Cal. Case No. 2:23-mc-00434.

### III.     ARGUMENT

**A.      T-Mobile Has Standing to Intervene.**

T-Mobile is not a party to this miscellaneous case filed by Mr. Rose against KPMG, or to the underlying dispute between Mr. Rose and Cellular Touch, but it

has standing to intervene because Mr. Rose is seeking to compel KPMG to produce highly confidential work product that KPMG created for T-Mobile.

Pursuant to Federal Rule of Civil Procedure 24(a)(2), "the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

T-Mobile has standing to challenge the KPMG subpoena because it has a personal right in the information demanded: T-Mobile "need[s] to protect its confidential and proprietary information from disclosure." *Jabil, Inc. v. Essentium, Inc.*, 2021 WL 1814158, at *1 (M.D. Fla. May 6, 2021); *see also Costa v. Metro. Life Ins. Co.*, 2018 WL 1635642, at *6 (M.D. Fla. Apr. 5, 2018) ("[B]ecause [nonparties] claim a 'personal right or privilege' in certain of the information sought [from another nonparty], the Court finds that they have standing to object . . . .").

Although KPMG may submit its own opposition to Mr. Rose's motion, T-Mobile has an independent interest in preventing the disclosure of the sensitive information that justifies intervention. *See Medi-Weightloss Franchising USA, LLC v. Medi-Weightloss Clinic of Boca Raton, LLC*, 2012 WL 12904394, at *1 (M.D. Fla. May 10, 2012) (finding "minimal" burden of Rule 24 satisfied despite similar interests of intervener and another party) (collecting cases).

T-Mobile therefore respectfully asks the Court to permit it to intervene for the limited purpose of making this motion to transfer this dispute, quash the KPMG subpoena, or obtain a protective order.

**B.      The Court Should Transfer Mr. Rose's Motion to Compel Compliance.**

As explained above, Mr. Rose's subpoena to KPMG is not the only one he served in connection with his underlying litigation.  He also served subpoenas on T-Mobile and another T-Mobile vendor named Mandiant.  Mr. Rose filed three separate motions to compel compliance as to the three subpoenas in three district courts (S.D. Fla., E.D. Cal., and D.N.J.).  The subpoena to KPMG at issue in this action overlaps with the subpoena issued to T-Mobile.  Both seek reports and correspondence relating to KPMG's work for T-Mobile.  *See* Moon Decl., Exs. A-B (KPMG and T-Mobile overlapping subpoena).  There is no reason for multiple courts to rule on the same issues.  The Court should grant T-Mobile's motion and transfer Mr. Rose's motion to compel to the Middle District of Florida pursuant to Rule 45 so that one court can decide the interrelated issues that the motions present.

A party moving to quash or compel compliance with a subpoena must bring a motion to compel in the court where compliance is required (i.e., S.D. Fla. for the KPMG subpoena).  *See* Fed. R. Civ. P. 45(d)(3)(A)-(B) (quashing subpoena); *id.* at 45(d)(2)(B)(i) (compelling compliance).  The court where compliance is required, however, "may transfer a motion under this rule to the issuing court [here, M.D. Fla.] if the person subject to the subpoena consents or if the court finds exceptional circumstances."  *Id.* at 45(f).  Both grounds for transfer under Rule 45(f) are met.

First, KPMG—the entity subject to the subpoena—consents to transfer of Mr. Rose's motion to compel compliance and this motion to the Middle District of Florida.  Moon Decl. ¶ 8.

Second, exceptional circumstances exist for transfer.  Courts have found "exceptional circumstances" in transferring subpoena-related motions when doing so is in "the interests of judicial economy and avoiding inconsistent results." *Drummond Co. v. Collingsworth*, 2014 WL 12862208, at *4 (S.D. Fla. July 11, 2014) (internal quotation marks omitted) (collecting cases).  One key concern justifying transfer is "'when the same discovery issues are likely to arise in many districts.'" *Swissdigital USA Co., Ltd. v. Wenger, S.A.*, 2022 WL 17904108, at *2 (S.D. Fla. Dec. 23, 2022) (quoting Fed. R. Civ. P. 45(f) Advisory Comm. Notes to 2013 Amend.). That standard is satisfied here.

Mr. Rose's underlying action has been pending in the Middle District of Florida since January 11, 2023 (M.D. Fla. Case No. 2:23-cv-22, ECF No. 1), and he recently moved to extend the discovery deadline to July 2024 and the trial date to March 2025 (ECF No. 24).  Mr. Rose initially filed his motion to compel KPMG's compliance in that district court.  (ECF No. 22.)  The district court denied the motion but acknowledged the matter could be transferred "[i]f the Southern District finds exceptional circumstances or if KPMG consents[.]"  (ECF No. 23.)  Mr. Rose faces no undue burden in litigating his motion to compel in that forum.

Keeping these motions in separate district courts wastes judicial resources and creates the risk of inconsistent orders as to the same issues regarding KPMG's

work for T-Mobile.  Courts routinely transfer motions relating to subpoenas for these exact reasons.  *See, e.g.*, *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014) ("Other courts have found exceptional circumstances warranting transferring subpoena-related motions to quash when transferring the matter is in 'the interests of judicial economy and avoiding inconsistent results.'") (quoting *FTC v. A+ Fin. Ctr., LLC*, 2013 WL 6388539, at *3 (S.D. Ohio Dec. 6, 2013)); *Dogra v. Hardin*, 2022 U.S. Dist. LEXIS 210908, at *12 (C.D. Cal. Nov. 18, 2022) ("For these reasons, in particular to avoid any conflicts with the issuing court's management of the Missouri action, as well as to avoid the risk of inconsistent rulings regarding the permissible scope of such discovery, the Court finds that exceptional circumstances exist for a Rule 45(f) transfer.").

Therefore, the Court should transfer Mr. Rose's motion to compel to the Middle District of Florida and close this miscellaneous action.  The Court may alternatively stay the pending subpoena-related motions until the Middle District decides identical issues as to same KPMG documents in connection with Mr. Rose's subpoenas issued to T-Mobile.  *See Ephraim v. Abbott Lab'ys*, 601 F. Supp. 3d 1274, 1275 (S.D. Fla. 2022) ("This Court begins by noting that it has the inherent authority to stay an action before it while the resolution of a related action in another court is pending.") (collecting cases).

## C.    In the Alternative, the KPMG Subpoena Should Be Quashed.

If the Court declines to transfer Mr. Rose's motion to compel, the Court should grant T-Mobile's motion to quash the KPMG subpoena because it seeks irrelevant and highly confidential information about T-Mobile.

### 1.   The Information Mr. Rose Seeks Is Neither Relevant Nor Proportional to the Needs of His Case.

Courts should quash a subpoena that "seeks irrelevant information." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020); *see also Garcia v. L'Olivo S. Ave., LLC*, 2023 WL 5042736, at *1 (M.D. Fla. Aug. 8, 2023) ("'[O]bjections on relevance and proportionality' are permissible against a third-party subpoena.") (quoting *JWD Auto., Inc. v. DJM Advisory Grp. LLC*, 317 F.R.D. 587, 588–89 (M.D. Fla. 2016)).  As the party seeking disclosure, Mr. Rose must first prove that his subpoena seeks information relevant to his claims against Cellular Touch, the only defendant here.  *Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007), *recons. in part on other grounds*, 2008 WL 68594 (M.D. Fla. Jan. 4, 2008).  It does not.

Mr. Rose alleges that "*insiders* at [Cellular Touch] . . . transferred to an unknown John Doe control over Plaintiff's mobile telephone number and e-mail address, which led to the swift theft of . . . [his] cryptocurrency assets . . . ."  Compl. ¶ 39 (emphasis added).  Having been "[p]rovided access *by Defendant's employees or authorized agents*, John Doe . . . was able to access Plaintiff's cellphone and Plaintiff's cryptocurrency wallet at MyEtherWallet, where Plaintiff stored a valuable cryptocurrency portfolio."  *Id.* ¶ 47 (emphasis added).  None of KPMG's work addressed situations where allegedly malicious employees accessed customer accounts without authorization.  Wallace Decl. ¶ 4.  KPMG was not engaged to investigate Mr. Rose's incident or unauthorized SIM swaps at all.  *Id.*

11

To be clear, **Mr. Rose's data was not exposed in the cyberattack that prompted T-Mobile to engage KPMG**. Wallace Decl. ¶ 3. The cyberattack is unrelated to his claims against Cellular Touch. The cyberattack was a separate event from the SIM swap and occurred through different means.

Furthermore, even if the subpoena sought relevant information (it does not), the requests are wholly disproportionate to the limited needs of Mr. Rose's discrete case against Cellular Touch. For example, Request Nos. 3 and 4 request "[a]ll" nonprivileged documents relating to "any" risk reviews conducted by KPMG for Metro or T-Mobile of any computerized platform they might employ. Moon Decl., Ex. A at 7. These Requests are not limited to reviews of computerized platforms relating to Mr. Rose's Metro account or even "SIM swaps." *Id.*

T-Mobile is a large enterprise that uses different software, platforms, and systems for different parts of its business. Wallace Decl. ¶¶ 6-7. As noted, the T-Mobile systems attacked in August 2021 and KPMG's subsequent work on those systems bear no relation to the SIM swap affecting Mr. Rose's Metro account. *Id.* ¶¶ 3-4. Mr. Rose cannot make any showing that this information is relevant or proportional to the needs of his case against Cellular Touch.

### 2. The Subpoena Seeks Highly Confidential Information for which Mr. Rose Does Not Have a Substantial Need.

The Court may quash a subpoena when a party's privacy interest in subpoenaed information outweighs the need for disclosure. *See* Fed. R. Civ. P. 45(d)(3)(B)(i) (a court may "quash or modify the subpoena if it requires . . .

disclosing . . . confidential research, development, or commercial information"); *see also Jordan*, 947 F.3d at 1335.

The party seeking disclosure must demonstrate a "substantial need" for confidential information. *See Fadalla*, 258 F.R.D. at 514 (modifying subpoena to limit disclosure of confidential information due to lack of "evidence that [seeking party had] a substantial need for [it]"). A party that raises confidentiality concerns must "establish that the information sought is indeed confidential and then demonstrate that its disclosure might be harmful." *Pro Video Instruments, LLC v. Thor Fiber, Inc.*, 2019 WL 5296817, at *1 (M.D. Fla. Sept. 9, 2019); *see also* Fed. R. Civ. P. 45, Advisory Comm. Notes to 1991 Amend. (tying Rule 45 to Rule 26).

Confidential information subject to protection is broadly defined to include "confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G); *see also In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2014 WL 1660386, at *5 (S.D. W.Va. Apr. 22, 2014) (citing *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 305, *ord. clarified by* 153 F.R.D. 614 (N.D. Ill. 1993)). It includes information relating to security measures that protect critical infrastructure and institutions, which could be harmed by disclosure to bad actors. *See, e.g.*, *In re Sec'y, Fla. Dep't of Corr.*, 2020 WL 1933170, at *1–2 (11th Cir. Mar. 30, 2020) (finding an abuse of discretion by district court in denying motion for protective order to protect "highly sensitive safety and security information" for prisons); *Suffolk Cnty. Water Auth. v. Dow Chem. Co.*, 2022 WL 1025932, at *2 (E.D.N.Y. Apr. 6, 2022) (protecting confidential utility "information about drinking

13

water sources that could be used by bad actors to target drinking water supplies");
*Cornelius v. Markle Investigations, Inc.*, 220 Conn. App. 135, 159–60 (2023)
(denying discovery of school security information because "that information would
provide a roadmap of what type of work was performed and where the work
occurred") (internal quotation marks omitted).

Here, Mr. Rose seeks information about how T-Mobile guards its cyber walls
against constant attempts to breach them.  Technical details pervade KPMG's work
product that would greatly assist the hackers who routinely target T-Mobile.
Indeed, the information relates to what the United States government classifies as
"critical infrastructure" targeted by bad actors.[2]  Thus, the sensitive information
and analysis about T-Mobile's data-security infrastructure sought by the subpoena
to KPMG fall squarely into the category of confidential, security-related research
that requires protection.

Data security is central to T-Mobile's business and its tens of millions of
customers.  For that reason, disclosure of KPMG's work relating to the cyberattack

---

[2] *See* National Counterintelligence and Security Center, *Insider Threat Mitigation
for U.S. Critical Infrastructure Entities* (2021), available at
https://www.dni.gov/files/NCSC/documents/news/20210319-Insider-Threat-
Mitigation-for-US-Critical-Infrastru-March-2021.pdf, at pp. 5-6 ("Critical
infrastructure entities encompass the 16 sectors defined by Presidential Policy
Directive 21 (Critical Infrastructure Security and Resilience), including . . .
telecommunications networks . . . . 'Foreign intelligence entities are developing
the capacity to exploit, disrupt, or degrade critical infrastructure worldwide.
Their efforts likely are aimed at influencing or coercing U.S. decision makers in a
time of crisis by holding critical infrastructure at risk.  The decentralized and
digital nature of critical infrastructure worldwide creates vulnerabilities that
could be exploited by foreign intelligence entities . . . .'").

was tightly controlled and not available outside of T-Mobile and KPMG.  Wallace Decl. ¶¶ 5-6.  Indeed, T-Mobile instructed KPMG to use only T-Mobile-owned computers and email accounts for its work given the sensitivities involved.  *Id.* Even within T-Mobile, the information is only available to those involved in KPMG's work.  *Id.*

Expanding access to KPMG's work product beyond T-Mobile and KPMG security specialists would unavoidably increase the likelihood of hackers obtaining this highly sensitive research, which they would undoubtedly use to harm T-Mobile or its customers.  *See Moore v. Lender Processing Servs., Inc.*, 2012 WL 4953127, at *3 (M.D. Fla. Oct. 17, 2012) ("'[T]he more widely confidential documents are disseminated, it becomes . . . more likely that those documents will be released . . . .'") (quoting *Williams v. Taser Int'l, Inc.*, 2006 WL 1835437, at *2 (N.D. Ga. June 30, 2006)).

Disclosure of KPMG's work product would also increase the risk that T-Mobile's competitors obtain and exploit this valuable security information.  *See id*.  Such information about remedial efforts concerning valuable commercial assets is confidential under Rule 45(d)(3)(B)(i).  *See, e.g.*, *Culinary Foods*, 151 F.R.D. at 305.

Mr. Rose has no need for KPMG's work product regarding T-Mobile's security improvements, let alone a need that would overcome the significant potential harm to T-Mobile from disclosure.

**D.      In the Alternative, Conditions on Review Should be Imposed.**

If the Court does not quash the subpoena, it should "order . . . production under specified conditions."  Fed. R. Civ. P. 45(d)(3)(C).  The conditions should include, in lieu of production, that KPMG make documents available for inspection at a mutually agreeable secure location (e.g., KPMG or T-Mobile's offices in Florida).

In addition, the Court should enter a protective order preventing anyone other than Mr. Rose's attorneys and retained experts from reviewing the material, notwithstanding T-Mobile's view that such an order is inadequate for the circumstances presented here.  "[C]onfidential research . . . is entitled to protection where it has economic value from not being generally known, has been the subject of reasonable efforts aimed at secrecy, and the disclosure of which is likely to result in a clearly defined and very serious injury to the designating party."  *Smart Commc'ns Holding, Inc. v. Correct Sols., LLC*, 2020 WL 10498681, at *2 (M.D. Fla. Dec. 2, 2020).  Against the claimed need for a protective order by one party, courts "balance the [other] party's need for the discovery . . . ."  *Health & Sun Rsch., Inc. v. Designer Skin, LLC*, 2013 WL 12155011, at *1 (M.D. Fla. Mar. 27, 2013).  As explained above, Mr. Rose has no need, substantial or otherwise, for the KPMG work product.  T-Mobile, on the other hand, has an obvious and compelling interest in safeguarding the valuable and confidential documents sought by Mr. Rose.  But there is no protective order in place here that would prevent the further dissemination of this sensitive information.

16

Accordingly, any intrusion into confidential security documents should be (1) limited to counsel for Mr. Rose and retained experts at a secure location and (2) subject to a protective order entered by the Court.

## IV.    CONCLUSION

The Court should transfer this action to the Middle District of Florida where Mr. Rose's underlying litigation against Cellular Touch is pending.  In the alternative, the Court should quash the subpoena Mr. Rose issued to nonparty KPMG or, in the alternative, issue a protective order (a) permitting only Mr. Rose's counsel and retained experts to review confidential documents produced and (b) requiring such review to occur at a secure KPMG or T-Mobile facility.

## <u>CERTIFICATE OF GOOD-FAITH CONFERENCE</u>

Pursuant to Local Rule 7.1(a)(3)(B), counsel for T-Mobile hereby certifies that T-Mobile has conferred with counsel for plaintiff William Rose in a good-faith effort to resolve the present motion numerous times, including on November 6, 2023, November 16, 2023, November 20, 2023, November 28, 2023, December 11, 2023, December 12, 2023, January 5, 2024, and January 9, 2024.  A resolution of the motion was not agreed.

<div style="margin-left: 40%;">

s/Brian W. Toth

Brian W. Toth

</div>

Dated:  January 9, 2024

Respectfully submitted,

s/Brian W. Toth
Brian W. Toth
Florida Bar No. 57708
btoth@tothfunes.com
Freddy Funes
Florida Bar No. 87932
ffunes@tothfunes.com
TOTH FUNES PA
Ingraham Building
25 Southeast Second Avenue, Suite 805
Miami, FL 33131
Phone: (305) 717-7852

James Moon (*pro hac vice* forthcoming)
jamesmoon@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Phone: (213) 633-6819

*Counsel for Nonparty T-Mobile USA, Inc.*